UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEI KUM CHU, SAU KING CHUNG, and QUN XIANG LING, individually and on behalf of all others similarly situated,

    *Plaintiffs,*

  - against -

CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM, INC.,

    *Defendant.*

16 Civ. 03569 (KBF) (SN)

## PLAINITFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

Carmela Huang
David A. Colodny
URBAN JUSTICE CENTER
123 William Street, 16th Floor
New York, NY 10038
Tel: (646) 602-5600

Michael Taubenfeld, Esq.
SERRINS FISHER LLP
233 Broadway, Suite 2340
New York, NY 10279
Tel: (212) 571-0700

Edward Tuddenham, Esq.
228 W. 137th Street
New York, NY 10030
Tel: (212) 234-5953

*Attorneys for Plaintiffs*

## I. PRELIMINARY STATEMENT

Defendant's arguments rest principally on the idea that the memorandums of agreement ("MOA") entered into by Defendant and the Union in 2014 and 2015 apply to Plaintiffs' claims. However, this is plainly wrong. Because Plaintiffs are not "Employees" as defined by the agreements, nor were they members of the bargaining unit represented by the Union, the 2015 MOA does not cover Plaintiffs' claims and Plaintiffs are not contractually bound to follow its arbitration provisions. The 2014 MOA similarly has no effect on Plaintiffs' claims because it contains no arbitration requirement for statutory claims at all. Plaintiffs may not be compelled to arbitrate their claims and Defendant's motion to compel arbitration should be denied.

## II. ARGUMENT

### A. The 2015 MOA Does Not Apply to Plaintiffs' Claims

While Defendant is correct that "[t]here is a strong federal policy favoring arbitration under the FAA, which requires federal courts to enforce valid arbitration agreements," Defendant has failed to make the threshold showing that the FAA even applies to Plaintiffs' claims. See, e.g., Peyser v. Kirschbaum, No. 12 Civ. 2857(KBF), 2012 WL 6200739 at * 2 (S.D.N.Y. Dec. 11, 2012) (noting that on a motion to compel arbitration, a threshold of applicability of the FAA must be satisfied). Defendant elides any argument on whether the 2015 MOA is a valid agreement binding Plaintiffs to arbitration and simply assumes that the 2015 MOA applies to Plaintiffs' claims. This omission is a calculated one as it allows Defendant to avoid the incontrovertible truth: the 2015 MOA does not apply to Plaintiffs and is not a valid agreement to arbitrate as required by the FAA.

The 2015 MOA requires that "all claims brought by either the Union or Employees, asserting violations of or arising under the Fair Labor Standards Act ("FLSA"), New York Home

1

Care Worker Wage Parity Law, or New York Labor Law…shall be subject exclusively, to the grievance and arbitration procedures described in this Article." <u>See</u> Docket Entry 7-1, 2015 MOA, p. 9.  By its own terms, the 2015 MOA applies only to "Employees."  However, Plaintiffs were not "Employees" at the time the 2015 MOA became effective.[1]  Plaintiffs had stopped working for Defendant well before the 2015 MOA's December 1, 2015 effective date.  <u>See</u> Docket Entry 17-1, Plaintiffs' Complaint ¶¶ 39, 46, 53; Declaration of Mei Kum Chu ("Chu Decl.") ¶¶ 1, 4,; Declaration of Sau King Chung ("Chung Decl.") ¶¶ 1, 4; Declaration of Qun Xiang Lin ("Lin Decl.") ¶¶ 4.  Because the CBA contained no arbitration provisions relating to statutory claims at any time during Plaintiffs' employment, and because the Plaintiffs left Defendant's employment prior to the effective date or ratification of the MOA containing an arbitration clause, Plaintiffs cannot now be compelled to arbitrate based on subsequently adopted amendments to the CBA to which they were not a party.  <u>See, e.g.</u>, <u>iPayment, Inc., v. 1st Americard, Inc.</u>, 15 Civ. 1904 (AT), 2016 WL 1544736 (S.D.N.Y. Mar. 25, 2016) ("Because the obligation to arbitrate is created by a contract, 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'") (citing <u>United Steelworkers of Am. v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582 (1960)).

While the Union "enjoys broad authority…in the negotiation and administration of the collective bargaining contract," its authority derives from its role as the employees' exclusive bargaining representative.  <u>14 Penn Plaza LLC v. Pyett</u>, 556 U.S. 247, 255-256 (2009).  Had the 2015 MOA included a provision entitling "Employees" to higher wages or per diem rates, Plaintiffs would not be entitled to seek those increased wages from Defendant – through arbitration or otherwise – because they were no longer "Employees" at the time the 2015 MOA

---

[1] No definition of "Employee" appears in the 2015 MOA, however the 2012 CBA defines "Employee" to mean "the employees in the bargaining unit covered by the Agreement."  <u>See</u> Docket Entry 7-3, 2012 CBA, Article I ¶ 3.

became effective.  Defendant would not be obligated to treat Plaintiffs as "Employees."  In parallel fashion, Defendant cannot now seek to bind Plaintiffs to the obligations of "Employees."  See Holick v. Cellular Sales of New York, LLC, 802 F.3d 391, 398 (2d Cir. 2015) (affirming district court decision denying motion to compel arbitration on the basis that the plaintiffs were not employees at the time the arbitration agreement went into effect).

Plaintiffs were not members of the bargaining unit, and the Union did not represent Plaintiffs at the time 2015 MOA became effective.  Indeed, even had the Union wished to include Plaintiffs within the ambit of the MOA, such an intention would be ineffective, as Plaintiffs *could not* be members of the bargaining unit.  A worker "whose work has ceased with no expectation of return… could not properly be joined with the active employees in the unit that the Union represents." Allied Chem. & Alkali Workers, Local Union No. 1 v. Pittsburgh Plate Glass Co., 404 U.S. 157, 172 (1971).  As Plaintiffs no longer worked for Defendant, and had no expectation of returning to work for Defendant, the Union could not make representations or agreements on their behalf, without their consent, in a collective bargaining agreement entered into with Defendant governing solely current members of the bargaining unit.  "Absent some evidence that past members expressly or impliedly authorized the union to proceed in their behalf, there can be no presumption that the Union had authority to act in a representative capacity." Meza v. General Battery Corp., 908 F.2d 1262, 1271 (5th Cir. 1990).  In this instance, actions by the Union show that the Union was well aware that Plaintiffs were not, and could not, be members of the bargaining unit:  when the Union held a meeting to discuss ratification of the 2015 MOA in January 2016, Plaintiffs were told that they could not participate because they were no longer employees of CPC or members of the Union.  See Chu Decl. ¶¶ 8-9; Chung Decl.

3

¶¶ 8-9; Lin Decl. ¶¶ 7-8.  Therefore, the arbitration provisions contained therein are completely irrelevant to this lawsuit.

None of the cases cited by Defendant hold otherwise.  In each of those cases, the threshold question of the FAA's applicability was established.  In <u>Germosen v. ABM Indus. Corp.</u>, the plaintiff did not dispute that he was a member of the Union and that a collective bargaining agreement containing a mandatory arbitration provision was in operation.  No 13-CV-1978 ER, 2014 WL 4211347, at *3, fn. 5 (S.D.N.Y. Aug. 26, 2014).  Instead, the plaintiff only disputed whether the arbitration provision could be enforced on his claims arising under the American with Disabilities Act, Title VII of the Civil Rights Act of 1964, the New York City and State Human Rights Laws.  <u>Id.</u>, at *5-7.  In <u>Pontier v. U.H.O. Management Corp.</u>, the plaintiff argued that he could not be compelled to arbitrate his claims because the collective bargaining agreement between the defendant and the Union had expired in 2006, before his claims had accrued in 2007.  No. 10 CIV. 8828 RMB, 2011 WL 1346801, at *1-2 (S.D.N.Y. Apr. 1, 2011).  However, the Court found that the defendant had made a threshold showing of FAA applicability because the expired CBA stated that the arbitration clause, "[u]pon the expiration of the CBA on April 20, 2006, …shall continue in full force and effect for an extended period until a successor agreement has been executed."  <u>Id.</u>, at *1.  In <u>Duraku v. Tishman Speyer Props., Inc.</u>, the Court found that an arbitration agreement entered into by the Union and defendant employer after the plaintiffs had filed their federal court complaint had retroactive effect on the plaintiffs' claims.  714 F. Supp. 2d 470, 474 (S.D.N.Y. 2010).  Although not explicitly addressed by either party, the plaintiffs were still members of the bargaining unit represented by the Union when the arbitration agreement became effective.  <u>See</u> <u>Duraku v.</u>

4

Tishman Speyer Props., Inc., Complaint, 09 CV 09531-DLC, Docket Entry 1, attached as Exhibit 1 to the Declaration of Carmela Huang.

     Nor may Plaintiffs be compelled to arbitrate their claims under any of the five theories recognized by the Second Circuit to bind nonsignatories to the arbitration agreements of other parties.  See Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995) ("Accordingly, we have recognized five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 30 agency; 4- veil-piercing/alter ego; and 5) estoppel."); also Winter Investors, LLC v. Panzer, No. 14 Civ. 6852(KPF), 2015 WL 5052563 at * 6 (S.D.N.Y. Aug. 27, 2015).  Here, Plaintiffs have not entered into a separate contractual relationship with either the Union or Defendant incorporating the existing arbitration clause that would permit incorporation by reference.  Id. at 777 (delineating the contours of when incorporation by reference would apply).  Plaintiffs have engaged in any conduct that would indicate that they are assuming the obligation to arbitrate.  Id. (describing when a nonsignatory may be bound by the theory of assumption).  No traditional principles of agency law may bind Plaintiffs to the arbitration agreement.  Id.  Veil-piercing and alter ego theories are wholly inapplicable.  Id. (explaining this theory by which nonsignatories may be bound).  And Defendant has not – and could not – articulate any theory of estoppel that would be binding on Plaintiffs.  Id. at 778.  On the contrary, it would violate public policy if Plaintiffs were found to be bound by the bargaining activity of the Union, even when they were no longer members of the bargaining unit.  See, e.g., Local One Amalgamated Lithographers of Am. V. Stearns & Beale, Inc., 812 F.2d 763, 769 (2d Cir. 1987) (holding that the enforcement of an arbitration award affecting the rights of nonunion employees violated the NLRA and public policy); Allied Chemical v. Pittsburgh Plate Glass, 404 U.S. 157, 159-160 (1971) (holding that retired

employees were not employees under the NLRA and could not be included in the same bargaining unit as current employees).

"Thus, while there is a strong and liberal federal policy favoring arbitration agreements, such agreements must not be so broadly construed as to encompass claims and parties that were not intended by the original contract." Thomson-CSF, S.A., 64 F.3d at 776.  For all of the reasons articulated above, Plaintiffs may not be compelled to arbitrate their claims and Defendant's motion to compel arbitration should be denied.

### B. The 2014 MOA Does Not Clearly and Unmistakably Subject Any Statutory Rights To Arbitration

Defendant also makes the unsupported declaration that the 2014 MOA compels Plaintiffs to arbitrate their claims.  However, as the Supreme Court of the State of New York already found in a related action, the 2014 MOA contains no provisions that would require Plaintiffs to arbitrate their claims.  See Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc., 21 N.Y.S.3d 814, 826 (N.Y. Sup. Ct. 2015).

"A union-negotiated CBA cannot waive rights to bring a [ ] statutory claim in a judicial forum unless that waiver is clear and unmistakable." Fernandez v. Windmill Distributing Co., No 12-cv-01968, 2016 WL 452154 at *3 (S.D.N.Y. Feb. 4, 2016) (citing Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 79-80 (1998)).  Instead, union members may only be forced to submit their statutory claims to arbitration when those statutes are specifically referenced in the collective-bargaining agreement's arbitration provision.  See, e.g., 14 Penn Plaza LLC v. Pyett, 556 U.S. at 274 ("a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims is enforceable as a matter of federal law"); Duraku v. Tishman Speyer Properties, Inc., 714 F.Supp. 2d at 474 (finding that arbitration was required

because the "CBA states unambiguously that all 'claims made pursuant to [Title VII], …the [NYSHRL], the [NYCHRL]…shall be subject to the grievance and arbitration procedures.'"). This is because "an arbitrator's power is both derived from, and limited by, the collective-bargaining agreement and his task is limited to construing the meaning of the collective-bargaining agreement so as to effectuate the collective intent of the parties." Pyett, 556 U.S. at 263 (citing Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 744 (1981) (internal punctuation omitted).

As discussed *supra*, the only agreements to arbitrate that could be applicable to Plaintiffs' claims are those that were in effect during Plaintiffs' employment with CPC. In its memorandum of law in support of its motion to compel arbitration, Defendant claims, without any substantiation, that 2014 MOA requires Plaintiffs to arbitrate claims arising under state and federal law. See Docket Entry 6, Defendant's Memorandum of Law at p.7, fn. 7. However, an examination of the 2014 MOA quickly reveals no clear or unmistakable waiver of statutory rights. In fact, the 2014 MOA requires no arbitration of any statutory rights. Instead, the 2014 MOA refers to arbitration only those disputes relating to the economic terms of the MOA.[2] Paragraph 22 of the agreement provides that:

> [p]ayment of the economic terms of this Memorandum of Agreement is conditioned on their compliance with the Home Care Worker Wage Parity Law. If a party claims that a term is non-compliant, the parties will immediately meet to discuss appropriate modifications to bring the MOA into compliance with the Wage Parity Law. In the event the parties cannot resolve their dispute, the matter shall be referred to Martin F. Scheinman for resolution through binding arbitration.

---

[2] Paragraph 24 of the 2014 MOA also states that Defendant and the Union "agree…to develop an expeditious and effective alternative dispute resolution procedure for the resolution of claims arising under such laws. Accordingly, …the parties shall meet in good faith to negotiate such an alternative dispute resolution procedure. If the parties are unable to agree to such a procedure in the allotted time, the Employer may dispute the dispute to Martin F. Scheinman for final and binding arbitration." However, this section of the MOA too contains no language regarding the arbitration of any statutory claims, especially not those statutory claims at issue in Plaintiffs' complaint. "Such paragraph does not require plaintiffs to submit a federal or state claim to arbitration." Chan, 21 N.Y.S.3d at 826.

7

Docket Entry 7-4, 2014 MOA ¶ 22. Paragraph 23 of the agreement provides that Defendant and the Union will submit disputes relating to the Employer's ability to comply with the agreement's economic terms for resolution through binding arbitration.  Docket Entry 7-4, 2014 MOA ¶ 23.

As the state court presented with this identical issue has already determined, neither of those provisions "clearly indicate an agreement to arbitrate the claims raised in the complaint." Chan, 21 N.Y.S.3d at 826 (in which the plaintiffs raised the same state law claims as asserted by the Plaintiffs in the instant litigation).  Specifically, the court found that "Paragraph 22 requires binding arbitration of a claim that *a term* of the MOA fails to comply with the Wage Parity Law. Plaintiffs do not claim that any term of the MOA violates the Wage Parity Law, but that defendant's payments violate such law."  Id. (emphasis in original)  The state court also found that "Paragraph 23 does not apply to the claims herein, as this paragraph concerns binding arbitration over the issue of whether the defendant has 'insufficient funds to comply on a temporary basis.'"  Id.  Because the 2014 MOA fails to provide any statement – much less a clear and unmistakable statement one – requiring the arbitration of statutory claims, Plaintiffs cannot be compelled to arbitrate their claims under the New York Labor Law, New York Home Care Workers Wage Parity Act, and Living Wage Law and Defendant's motion to compel arbitration should be denied.

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court deny Defendant's motion to compel arbitration in its entirety and further grant Plaintiffs their costs including their attorneys' fees in opposing Defendant's wrongful motion to compel.

Dated: New York, New York
       June 17, 2016                                   Respectfully Submitted
                                             By:      _____/s/_____
                                                      Carmela Huang
                                                      David A. Colodny
                                                      URBAN JUSTICE CENTER

                                                      Michael Taubenfeld
                                                      SERRINS FISHER LLP

                                                      Edward Tuddenham

                                                      *Attorneys for Plaintiffs*