UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————x

MEI KUM CHU, SAU KING CHUNG, and QUN XIANG LING, individually and on behalf of all others similarly situated,

                      *Plaintiffs*,

           - against -

CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM, INC.,

                      *Defendant*.

——————————————————————x

16 Civ. 03569 (KBF) (SN)

[Rel. 15 Civ. 09605 (KBF) (SN)]

**DEFENDANT CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OF THE MATTER AND STAY THE <u>PROCEEDINGS PENDING ARBITRATION</u>**

**Hogan Lovells US LLP**
**875 Third Avenue**
**New York, New York 10022**
**(212) 918-3000**

**Of Counsel**
      **Kenneth Kirschner**
      **Jose Irias**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ...................................................................................................................2

    I.    THE 2015 MOA REQUIRES PLAINTIFFS TO ARBITRATE THEIR CLAIMS .................................................................................................................2

        A.    The Plain Language of the 2015 MOA Reflects the Parties' Intent that All NYLL and Wage Parity Law Claims Be Submitted to the CBA's Mandatory Grievance and Arbitration Procedures ...............................................2

        B.    This Case is the Same as the *Chan* Case and Should Be Joined With It ...............8

    II.    PLAINTIFFS ARE REQUIRED TO ARBITRATE THEIR CLAIMS EVEN UNDER THE 2014 MOA ...........................................................................................9

CONCLUSION ................................................................................................................10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co.,
   Chem. Div.,*
   404 U.S. 157 (1971) .......................................................................................................6, 7

*Chan v. Chinese-American Planning Council Home Attendant Program, Inc.,*
   No. 15 Civ. 09605 (S.D.N.Y. Apr. 8, 2016) ...............................................................6

*Chan v. Chinese-American Planning Council Home Attendant Program, Inc.,*
   No. 15 Civ. 09605 (S.D.N.Y. Feb. 3, 2016) ..............................................................passim

*Duraku v. Tishman Speyer Props., Inc.,*
   714 F.Supp.2d 470 (S.D.N.Y. 2010) .........................................................................5

*Germosen v. ABM Indus. Corp.,*
   No. 13-CV-1978 ER, 2014 WL 4211347 (S.D.N.Y. Aug. 26, 2014) .........................5

*Holick v. Cellular Sales of N.Y., LLC,*
   802 F.3d 391 (2d Cir. 2015) ......................................................................................2, 6

*Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO,*
   430 U.S. 243 (1977) ...................................................................................................4

*Pontier v. U.H.O. Management Corp.,*
   No. 10 CIV. 8828 RMB, 2011 WL 1346801 (S.D.N.Y. Apr. 1, 2011) ......................4, 5

*Salamea v. Macy's E., Inc.,*
   426 F. Supp. 2d 149 (S.D.N.Y. 2006) .......................................................................5, 6

*Salzano v. Lace Entertainment, Inc.,*
   No. 13 CIV. 5600 LGS, 2014 WL 3583195 (S.D.N.Y. July 18, 2014) ......................5

*Sheet Metal Workers Local No. 2 v. Silgan Containers Mfg. Corp.,*
   690 F.3d 963 (8th Cir. 2012) .....................................................................................6

## PRELIMINARY STATEMENT

The 2015 Memorandum of Agreement ("2015 MOA") modifying and extending the collective bargaining agreement ("CBA") between Chinese-American Planning Council Home Attendant Program, Inc. ("CPC") and 1199SEIU United Healthcare Workers East ("1199" or "Union") requires "all claims . . . asserting violations of or arising under the . . . New York Home Care Worker Wage Parity Law or New York Labor Law (collectively, the 'Covered Statutes')" to be submitted to its mandatory grievance and arbitration procedures.  2015 MOA, Dkt. No. 7-1, p. 9 ¶ 1. There should be no question that Plaintiffs' NYLL and Wage Parity Law claims—like the claims alleged in the nearly-identical *Chan* complaint—are covered and must be arbitrated.

In fact, Plaintiffs are already part of *Chan*'s putative class and collective action, which is presently before the designated arbitrator, as this Court ordered in *Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*, No. 15 Civ. 09605 (S.D.N.Y. Feb. 3, 2016) ("*Chan*").[1]  Dissatisfied with the results in *Chan*, Plaintiffs bring the present complaint and argue that they are not required to arbitrate their claims because they were no longer employed by CPC when the 2015 MOA was entered into, but this assertion runs counter to the language of the agreement and the intent of the parties to it.  Further, although Plaintiffs themselves seek to avoid arbitration as required by the 2015 MOA, they purport to represent a class of employees that includes putative class members who currently work for CPC and are therefore inextricably bound to arbitrate.

This Court should not allow Plaintiffs to evade the mandatory grievance and arbitration provisions of the 2015 MOA, as well as this Court's two *Chan* decisions compelling arbitration. Indeed, even 1199, who is a party to the 2015 MOA and CBA concedes that such language has

---

[1]   The *Chan* putative class and collective action includes all current and former home care aides, from 2009 to the present.  *See* Point I.B., *infra*.

1

retroactive effect to any proceedings filed after December 2015.  Kirschner Affirm. ¶ 2.[2]  For these reasons and the reasons set forth in CPC's Opening Brief dated May 20, 2016, this Court should compel arbitration of Plaintiffs' claims and stay the proceedings pending arbitration.[3]

## ARGUMENT

### I.   THE 2015 MOA REQUIRES PLAINTIFFS TO ARBITRATE THEIR CLAIMS

#### A.   The Plain Language of the 2015 MOA Reflects the Parties' Intent that All NYLL and Wage Parity Law Claims Be Submitted to the CBA's Mandatory Grievance and Arbitration Procedures

Plaintiffs do not oppose, and implicitly concede—as they must—that all of their claims in the instant complaint relate to the Covered Statutes set forth in the 2015 MOA and are subsumed under its mandatory grievance and arbitration provisions.  Plaintiffs contend only that they are not required to arbitrate their claims because they were no longer employed by CPC when CPC and 1199 agreed to the mandatory grievance and arbitration procedures in the 2015 MOA.  But their argument fails: nothing in the agreement—including its use of the term "employees"—limits its applicability to only claims brought by current employees.  In fact, the language of the agreement reflects the parties' intent that all NYLL and Wage Parity Law claims—whether brought by current or former employees—be subject to its dispute resolution mechanism.

As Plaintiffs' attorneys argued in the nearly identical *Chan* case, "[w]hen interpreting an arbitration agreement . . . 'the parties' intentions control.'"  Plaintiff's Br. at 21, *Chan*, No. 15-09605 (S.D.N.Y. Jan. 15, 2016) (citing *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015)).  Here, the plain text of the 2015 MOA makes manifestly clear that 1199 and CPC intended for it to apply to *all* claims alleging NYLL or Wage Parity Law violations,

---

[2]   "Kirschner Affirm." refers to the Affirmation of Kenneth Kirschner, dated June 24, 2016, submitted herewith.

[3]   As discussed in its Opposition to Plaintiffs' Motion to Remand, Plaintiffs' counsel have sought to avoid federal jurisdiction in this case despite having invoked it in connection with the *Chan* matter, by filing federal unfair labor practice charges against 1199 and CPC.  Kirschner Affirm. ¶ 3; Dkt. No. 7-1.  Recently, however, Region 2 of the National Labor Relations Board issued a letter dismissing the charge against 1199.  *Id.* ¶ 4; Ex. 1.

whether brought by current or former employees.  The 2015 MOA provides, in pertinent part:

> 1.  The parties agree a goal of this Agreement is to ensure compliance with all federal, state, and local wage hour law and wage parity statutes.  Accordingly, *to ensure the uniform administration and interpretation of this Agreement* in connection with federal, state, and local wage-hour and wage parity statutes, *all claims brought by either the Union or Employees, asserting violations of or arising under the Fair Labor Standards Act ("FLSA"),  New York Home Care Worker Wage Parity Law,  or New York Labor Law (collectively, the "Covered Statutes"), in any manner, shall be subject exclusively, to the grievance and arbitration procedures described in this Article.*  The statute of limitations to file a grievance concerning the Covered Statutes shall be consistent with the applicable statutory statute of limitations.  All such claims if not resolved in the grievance procedure, including class grievances filed by the Union, or mediation as described below shall be submitted to final and binding arbitration before Martin F. Scheinman, Esq.  The Arbitrator shall apply appropriate law and shall award all statutory remedies and penalties, including attorneys' fees, consistent with the FLSA and New York Labor Law in rendering decisions regarding disputes arising under this Article.

2015 MOA, Dkt. No. 7-1, p. 9 ¶ 1 (emphasis added).

The parties to the CBA agreed to a detailed grievance and arbitration procedure in order to best ensure that the agreement be interpreted and administered uniformly with respect to all NYLL and Wage Parity Law claims.  *See id.* at pp. 9-10 ¶¶ 1-6.  This included an agreement to submit all such claims to a designated arbitrator, the establishment of time limits and procedures for resolving claims through the grievance, mediation, arbitration process; and an understanding that claimants would have the same rights they would have in prosecuting such claims in court, including the same statutes of limitations, the same discovery, the right to pursue class grievances/arbitration, entitlement to full statutory damages, and that the arbitrator be required to apply appropriate statutory law.  *Id.*; Ratner Decl. ¶ 4, *Chan*, No. 15-09605 (S.D.N.Y. Jan. 20, 2016).

Given their stated goal and detailed alternative dispute resolution scheme, the parties could not possibly have intended for claims brought by certain classes of claimants to be subject to arbitration while excluding the same claims brought by others, as this would utterly defeat the entire purpose of the arbitration agreement.  Plaintiffs are wrong about the parties to a collective

3

bargaining agreement affecting former employees, and the union's duty to continue to represent employees even after the expiration of a collective bargaining agreement.[4]  *Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 249-50 (1977) (holding that parties to an expired collective bargaining agreement are still subject to its arbitration clause unless the parties clearly intended to temporally limit the provision).  This Court should enforce the intent of the parties to the 2015 MOA and compel arbitration of the instant case.

Plaintiffs misapprehend the facts, and thus fail to distinguish, several cases that support compelling arbitration here.  First, Plaintiffs misapprehend *Pontier v. U.H.O. Management Corp.*, which presented nearly identical relevant facts as in the instant matter.  In *Pontier*, the employee, who was covered by a CBA, left his employer in 2007.  No. 10 CIV. 8828 RMB, 2011 WL 1346801, at *1 (S.D.N.Y. Apr. 1, 2011).   In 2010, almost two-and-a-half years later, the employer and union entered into a supplemental agreement to the CBA similar to the Protocol in *Pyett* and similar cases.  *Id.*  Plaintiff subsequently brought suit in federal court, alleging various discrimination claims, and the court ordered him to arbitrate.  *Id.*  In so doing, the court expressly and necessarily relied on the supplemental agreement that had gone into effect years after his employment with the defendant had ended.  *Id.* at *3.  As in *Duraku*, the court held that the fact that the supplemental agreement did not expressly state that it applied retroactively or to plaintiffs who were no longer employed by the defendant did not "relieve Plaintiff of his obligation to abide by the mediation and arbitration' provisions."  *Id.*  (quoting *Duraku v. Tishman Speyer Props., Inc.*, 714 F.Supp.2d 470, 474 (S.D.N.Y. 2010)).   As such, the court

---

[4]   Plaintiffs also argue that, as nonsignatories to the 2015 MOA, they may not be compelled to arbitrate their claims, but neither of the cases they cite for this proposition is in the collective bargaining context.  Plaintiffs' Opp. to Mot. to Compel at 5.  Their argument makes little sense here, since in the CBA context, a union representative—not the employees themselves—signs the agreement.  In fact, the *Chan* plaintiffs, whose claims have been ordered arbitrated, certainly did not sign their arbitration provisions.

ordered the matter to arbitration, under the precise facts presented here.

Further, Plaintiffs attempt to distinguish *Germosen v. ABM Industries Corporation* by arguing that "the plaintiff did not dispute that he was a member of the Union and that a collective bargaining agreement containing a mandatory arbitration provision was in operation."  Plaintiffs' Opp. to Mot. to Compel at 4.  This is incorrect.  In *Germosen,* the court expressly rejected plaintiff's assertion that a CBA was not binding on him merely because he was no longer a member of the union.  No. 13-CV-1978 ER, 2014 WL 4211347, at *6 (S.D.N.Y. Aug. 26, 2014).  Likewise, in *Salzano v. Lace Entertainment, Inc.*, the court held that because "the arbitration clause [did] not expressly provide for any time limitations, . . . the arbitration clause cover[ed] the FLSA and NYLL claims even though Plaintiff asserted them after the Contract expired." No. 13 CIV. 5600 LGS, 2014 WL 3583195, at *4 (S.D.N.Y. July 18, 2014).  The same rationale must apply here to include Plaintiffs' claims.

Plaintiffs also contend that the term "employee" in the arbitration provisions must refer only to current employees, but this argument too falls flat.  First, this understanding of the term is overly-narrow as a matter of common sense because it is incontrovertible that a terminated employee with claims arising out of any of the Covered Statutes could—and indeed must—seek relief through the agreed-upon grievance and arbitration process, despite no longer being an employee.[5]  For example, in *Salamea v. Macy's E., Inc.*, 426 F. Supp. 2d 149 (S.D.N.Y. 2006), the Court held that a former employee was required to exhaust remedies under the CBA before bringing claims of negligent termination and for unpaid wages since the claims fell within the scope of the grievance and arbitration provisions.  *Id.* at 156.

Plaintiffs' reliance on *Holick* to limit the definition of employee is also misplaced.  In

---

[5]   Indeed, many grievances arise from terminated employees who must arbitrate under the process in effect at the time they bring the complaint, not when they were employed.

*Holick*, plaintiff had signed two contracts, one as an earlier independent contractor and the other as an employee, and he temporally confined his claims to dates prior to the independent contractor agreement and did not seek any continuing claim as an employee.  802 F.3d at 391-94 n.12.  The facts here are nothing like those in *Holick*, since Plaintiffs were never employed under any agreement other than the CBA.  And in fact, the *Holick* Court recognized the distinction between long-standing federal policy supporting arbitration in the collective bargaining context versus individual employment agreements.  Indeed, this Court fully distinguished *Holick* in *Chan II* because it was not in the collective bargaining context.  *Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*, No. 15 Civ. 09605 (S.D.N.Y. Apr. 8, 2016).

Further, Plaintiffs invocation of *Allied Chemical & Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Company, Chemical Division*, 404 U.S. 157 (1971), is unavailing.  There, the Court held that retirees could not be members of the unit represented by the union because the retirees lacked a substantial "community of interests" with the active employees in the unit, for the purpose of negotiating future benefits.  *Id.* at 173.  Here, the issue is not future benefits, but CPC's and its employees' obligation to resolve disputes through the agreed-upon procedures, an issue in which current and former CPC employees share equal interest.  The Court in *Sheet Metal Workers Local No. 2 v. Silgan Containers Manufacturing Corporation* clearly expressed this distinction:

> Silgan's reliance on the Supreme Court case, *Allied Chemical & Alkali Workers of America v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971), to hold that deceased employees are excluded from the definition of employee in the CBA is also misplaced. In *Pittsburgh Plate Glass,* the Supreme Court held that it is not an unfair labor practice for employers to refuse to bargain with employees who have "ceased work without expectation of further employment" because those people are no longer employees. *Id.* at 168, 92 S.Ct. 383. In reaching this conclusion, the Court noted that "there is no anomaly in the conclusion that retired workers are 'employees' within § 302(c)(5) [of the Labor Management Relations Act] entitled to the benefits negotiated while they were active employees, but are not 'employees' whose ongoing benefits are embraced by the bargaining obligation of § 8(a)(5)." *Id.* at 170, 92 S.Ct. 383.

6

> Unlike the interests of retirees the Supreme Court considered in *Pittsburgh Plate Glass,* the interests of employees whose grievances arise in the course of their employment, but who die before those grievances are resolved, do not diverge from the interests of current employees. In *Pittsburgh Plate Glass,* the issue was the employer's continuing obligation to *negotiate* with former employees over future benefits. But here, the issue is the employer's continuing obligation to *resolve disputes* with former employees over an issue that occurred during the employee's employment. The two situations are clearly different: one imposes continuing bargaining obligations on the employer, while the other merely refuses to lift responsibility for mediating and resolving existing disputes with former employees. Where a union seeks to resolve a deceased employee's grievance, the interests of the deceased and current employees continue to be aligned, despite the death. The shared goal is the robust enforcement of the just-cause provision, which is important not only to the discharged employee, but also to active members of the bargaining unit.
>
> The parties agree that Stracener's claim for wrongful discharge was subject to the CBA during his lifetime. Because this claim arose while Stracener was an employee, the CBA continues to control his claim and mandate arbitration of it, even after his death.

690 F.3d 963, 967-68 (8th Cir. 2012) (emphasis in original).   Like in *Silgan Containers Manufacturing Corporation*, the issue here is whether the parties are obligated to resolve disputes through the agreed-upon mandatory grievance and arbitration procedure.   This case is distinguishable from *Pittsburgh Plate Glass Company*, which dealt with an employer's bargaining obligation with respect to retirees.   The Court held only that it is not an unfair labor practice to refuse to discuss retirees in negotiations, but did not in any way preclude a union and company from voluntarily agreeing to apply any aspect of the CBA to employees no longer in the bargaining unit.   In any event, even if *Pittsburgh Plate Glass Company were* applicable, here Plaintiffs indeed share a community of interest with CPC's current employees, as is evidenced by the nearly identical complaints brought by the *Chan* (current employees) and *Chu* (former employees) plaintiffs.

The plain text of the 2015 MOA evinces CPC's and 1199's intent to resolve all NYLL and Wage Parity Law claims, whether brought by current or former employees, through the agreed upon dispute resolution procedures.  Plaintiffs' arguments are unavailing to disprove that

the parties to the CBA could and did include them in the mandatory grievance and arbitration procedures of the 2015 MOA.

**B.    This Case is the Same as the *Chan* Case and Should Be Joined With It**

As discussed in CPC's opposition to Plaintiffs' motion to remand, Plaintiffs and their counsel brought this action almost immediately after this Court's recent holdings compelling arbitration in *Chan*, which involves nearly identical claims and factual allegations and a putative class that includes most, if not all, of the putative class members here, including named Plaintiffs themselves.  As a result of this maneuver, CPC is litigating almost the exact same issues as here, with respect to a virtually identical class, in the ongoing *Chan* arbitration.  The *Chan* complaint defines its class as:

> *All* current *and former home care aides*, meaning home health aides, personal care aids, home attendants or other licensed or unlicensed persons whose primary responsibilities include the provision of in-home assistance with activities of daily living, instrumental activities of daily living or health-related tasks, employed by Defendant in New York to provide care services to Defendant's elderly and disabled clients in the clients' home during the period from six years preceding the filing of the Complaint in this case through the present (the "Class Period").

*Chan* Compl.   ¶ 21.   Clearly, named Plaintiffs, former home care aides, are putative class members of the *Chan* class and are part of the ongoing arbitration.[6]  Their present suit before this Court, alleging almost the very same claims, defies any sense of judicial economy and presents a tremendous risk of inconsistent judgments.  This Court should therefore compel arbitration of the matter so that the two nearly-identical cases may be consolidated.

Further, although Plaintiffs argue that they were no longer employed by CPC when the 2015 MOA went into effect, and are therefore not bound to its arbitration provisions, they

---

[6]    In fact, during a May 23, 2016 mediation meeting between CPC and 1199, held in connection with the *Chan* matter, 1199's counsel stated that it did not object to the arbitrator's jurisdiction over the *Chu* case—which CPC has sought to consolidate with *Chan*—since *Chu* was brought after the 2015 MOA went into effect, thus defeating 1199's primary objection to the arbitrator's jurisdiction in *Chan*.  Kirschner Affirm. ¶ 2.

purport to represent employees who are undoubtedly covered by the agreement because they are still employed.  The *Chu* complaint defines its class as follows:

> All home care aides, meaning home health aides, personal care aids, home attendants or other licensed or unlicensed persons whose primary responsibilities include the provision of in-home assistance with activities of daily living, instrumental activities of daily living or health-related tasks, employed by Defendant in New York to provide care services to Defendant's elderly and disabled clients in the clients' home during the period beginning from April 1, 2008 through June 1, 2015 (the "Class Period").

*Chu* Compl. ¶ 16.  Although the class defines the period as ending June 1, 2015, it does not limit the class or its members to only those who stopped working for CPC by that date.  For example, an employee who began her employment with CPC in 2011 and whose employment continues to the present would be included in the putative class definition because she was "employed by [CPC] . . . during the period from April 1, 2008 through June 1, 2015." *Id.*  By cherry-picking named Plaintiffs who left CPC's employment before the 2015 MOA went into effect but purporting to represent even current employees who should undoubtedly be covered by it, Plaintiffs' counsel are attempting to deceive the Court into believing they represent only former employees.  This Court must not allow them to do so and must compel arbitration of this matter, as it did in *Chan,* in which Plaintiffs are putative class members.  This would also have the salutary effect of conserving judicial resources and avoiding the risk of inconsistent judgments.

## II.  PLAINTIFFS ARE REQUIRED TO ARBITRATE THEIR CLAIMS EVEN UNDER THE 2014 MOA

Even assuming *arguendo* that Plaintiffs are not bound to arbitrate their claims pursuant to the 2015 MOA, they are undoubtedly required to arbitrate under the 2014 MOA.  Plaintiffs allege incorrectly that the 2014 MOA provides no clear or unmistakable waiver of a statutory right.  But Paragraph 22 of the 2014 MOA makes clear that the CBA is designed to comply with the Wage Parity Law and unmistakably requires claims brought under that law to be arbitrated.  It provides:

> Payment of the economic terms of this Memorandum of Agreement is conditioned upon their compliance with the Home Care Worker Wage Parity Law.  *If a party claims that a term is non-compliant*, the parties will immediately meet to discuss appropriate modifications to bring the MOA into compliance with the Wage Parity Law.  In the event the parties cannot resolve their dispute, the matter shall be referred to Martin F. Scheinman for resolution through binding arbitration.

2014 MOA, Dkt. No. 7-4, ¶ 22 (emphasis added).  The clear function of the paragraph is to ensure that if any "term [of the CBA] is non-compliant" under the Wage Parity Law, the issue will be resolved internally or in arbitration, not through litigation.

The CBA clearly and unmistakably evinces the parties' intent to arbitrate state law claims like the ones brought here.  And without question, Plaintiffs bring claims under the Wage Parity Law and must therefore arbitrate their claims as required by the 2014 MOA.  Plaintiffs cite to the *Chan* state court decision which held against compelling arbitration.  However, that court incorrectly held that arbitration was not required because it mistakenly differentiated between a claim that a term of the CBA violates the Wage Parity Law and a claim that payments under a term of the CBA violate the Wage Parity Law; any difference is semantic at most.  Moreover, the state *Chan* case, which is on appeal, did not have the benefit of the 2015 MOA and would probably have been decided very differently if it existed at the time of the decision.  This Court should not defer to the *Chan* state court's decision and should compel arbitration even under the 2014 MOA.

## CONCLUSION

For the foregoing reasons and for the reasons given in its opening brief, CPC respectfully requests that this Court compel arbitration and stay the proceedings pending the arbitration covering all of Plaintiffs' claims and grant such other and further relief, including attorney's fees and costs, as this Court deems justice requires.

Dated:  New York, New York
       June 24, 2016

Respectfully submitted,

/s/ Kenneth Kirschner
Kenneth Kirschner
Jose Irias
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3260
Facsimile: (212) 918-3100

*Attorneys for Defendant Chinese-
American Planning Council Home
Attendant Program, Inc.*