UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 11, 2016

------------------------------------------------------------------ X
                                    :

MEI KUM CHU, SAU KING CHUNG, and QUN  :
XIANG LING, individually and on behalf of all  :
others similarly situated,  :
                                      :

                   Plaintiffs,  :         16-cv-3569 (KBF)
                                        :

                       -v-  :        OPINION & ORDER
                                        :

CHINESE-AMERICAN PLANNING COUNCIL  :
HOME ATTENDANT PROGRAM, INC.,  :
                                        :

                   Defendant.  :
------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

       Plaintiffs Mei Kum Chu, Sau King Chung, and Qun Xiang Ling commenced

this action, on behalf of themselves and all others similarly situated, by filing a

summons and complaint ("Complaint") in the New York Supreme Court, New York

County, on April 11, 2016.  The Complaint allege claims against plaintiffs' former

employer, defendant Chinese-American Planning Council Home Attendant

Program, Inc. ("CPC"), under the New York Labor Law ("NYLL"), as well as claims

for breach of contract and unjust enrichment arising from CPC's alleged violations

of the New York Home Care Worker Wage Parity Act ("Parity Act") and the New

York City Fair Wages for Workers Act ("Fair Wages Act").  (Compl., ECF No. 1-1.)

Plaintiffs were employed by CPC as home care aides to care for disabled and elderly

individuals in and around New York City, and allege that CPC failed to, inter alia,

pay them minimum wages, overtime wages and spread-of-hours wages, and furnish

proper wage statements.  On May 13, 2016, CPC removed this action to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331, on the ground that all of plaintiffs' claims are completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  (Notice of Removal ¶ 4, ECF No. 1.)

Shortly before plaintiffs commenced this action, this Court addressed a similar lawsuit in which current CPC employees brought claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207, and also brought New York state law claims.  See Chan v. Chinese-American Planning Council Home Attendant Program, Inc. ("Chan"), No. 15-cv-9605 (KBF) (S.D.N.Y.).  That action is currently stayed following the Court's grant of CPC's motion to compel arbitration based on a collective bargaining agreement ("CBA"), as supplemented by a Memorandum of Agreement made effective December 1, 2015 ("2015 MOA"), that was executed by CPC and the bargaining representative for CPC's employees, 1199 SEIU United Healthcare Workers East ("1199").  Because the operative complaint in Chan asserted a federal law claim under the FLSA, there was no dispute that the Court had jurisdiction to adjudicate that motion.

Now pending before the Court are two threshold motions—a motion to compel arbitration by CPC (ECF No. 5), and a motion to remand this action to state court by plaintiffs (ECF No. 15).  In its motion, CPC contends that all of plaintiffs' claims are subject to mandatory arbitration because such claims are expressly covered by the grievance and arbitration provisions contained in the 2015 MOA.  (See

Kirschner Aff., Ex. 2 ("2015 MOA"), ECF No. 24.)  Plaintiffs oppose CPC's motion on the ground that they are not covered by the 2015 MOA, which contained new mandatory arbitration provisions, because they were no longer employees at the time that the 2015 MOA became effective.  Plaintiffs also argue that the prior Memorandum of Agreement, dated June 6, 2014 (see Kirschner Aff., Ex. 3 ("2014 MOA")), does not require the parties to submit to binding arbitration for these claims.  With respect to their motion to remand, plaintiffs argue that LMRA preemption does not apply because their state law claims do not depend on the CBA and the Court need not interpret the CBA to adjudicate them.  CPC counters that resolution of plaintiffs' claims will require substantial interpretation of the CBA.

For the reasons set forth below, the Court concludes that LMRA preemption does not apply and, as a result, the Court lacks subject matter jurisdiction over this action.  Accordingly, plaintiffs' motion to remand this action to state court is GRANTED.  In light of that determination, CPC's motion to compel arbitration is DENIED as moot.

I.     FACTUAL BACKGROUND[1]

Plaintiffs Mei Kum Chu, San King Chung and Qun Xiang Ling were each previously employed by CPC as home care aides.  Chu's employment concluded on approximately October 14, 2013; Chung's employment concluded on approximately January 18, 2013; and Xiang's employment concluded on approximately June 1,

---

[1] The Court's factual recitation is drawn from the allegations in the Complaint.  At this stage, the Court accepts all allegations in the Complaint as true and draws all reasonable inferences in plaintiffs' favor.  See Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009); Vidurek v. Miller, No. 13 CV 4476 (VB), 2014 WL 901462, at *1 (S.D.N.Y. Feb. 27, 2014).  The Court here recites only those allegations which are pertinent to resolution of plaintiffs' motion to remand.

2015.  (Compl. ¶¶ 24-26.)  Plaintiffs' putative class consists of all home care aides employed by CPC to provide care services in clients' homes between April 1, 2008 and June 1, 2015.  (Compl. ¶ 16.)  CPC is a not-for-profit corporation that provides home health care services to elderly and disabled residents of New York City. (Compl. ¶¶ 13, 23.)  As detailed below, the Complaint alleges that CPC engaged in a number of unlawful wage and hour practices vis-à-vis plaintiffs and the putative class members.

The Complaint alleges that CPC had a "policy and practice" of paying plaintiffs "one hourly rate of pay during weekdays and a slightly higher hourly rate during weekends."  (Compl. ¶ 29.)  The Complaint also alleges that CPC regularly assigned plaintiffs to work 24-hour shifts (without receiving at least five hours of uninterrupted sleep time or three hours of meal and other break time), which required plaintiffs to "remain in the client's home or by the client's side for the entire 24-hour period to provide services, to monitor the client's location, and to be 'on call' to immediately provide services to the client as needed."  (Compl. ¶¶ 30-32.) CPC also had a "policy and practice" of paying plaintiffs "their hourly rate for only 12 hours of work during a 24-hour shift, plus a flat, per diem amount set at $16.95." (Compl. ¶ 34.)  CPC also had a "policy and practice" of not paying plaintiffs "their regular rate for all hours up to 40 in weeks during which [p]laintiffs . . . worked overtime hours."  (Compl. ¶ 36.)  Additionally, CPC failed to provide notices required by NYLL § 195 and 12 N.Y. C.R.R. § 142-3.8 on pay statements that it distributed to plaintiffs.  (Compl. ¶ 61.)  Based on the aforementioned alleged

conduct, the Complaint asserts seven state law causes of action—five claims pursuant to the NYLL and two common law claims.  These claims are as follows.

Starting with plaintiffs' NYLL claims, Count I alleges that CPC failed to pay the statutorily required minimum wage in violation of NYLL § 652 and 12 N.Y.C.R.R. § 142-3.1.  (Compl. ¶¶ 68-73.)  Count II alleges that CPC failed to pay the statutorily mandated overtime rate for all hours worked in excess of 40 per week, in violation of NYLL Article 19, § 650, et seq., and 12 N.Y.C.R.R. § 142-3.2, because CPC did not pay plaintiffs their regular rate for all hours up to 40 hours in weeks in which they worked overtime when plaintiffs were assigned to work 24-hour shifts.  (Compl. ¶¶ 74-78.)  Count III alleges that CPC failed to pay an additional hour of pay at the basic minimum hourly wage rate for every day that plaintiffs worked a spread of hours that exceeded 10 hours (or a shift in excess of 10 hours), in violation of NYLL §§ 190, et seq., and 650, et seq., and 12 N.Y.C.R.R. § 142-3.4.  (Compl. ¶¶ 79-82.)  Count IV alleges that CPC failed to pay plaintiffs all wages which they were owed whenever plaintiffs were assigned to work 24-hour shifts, in violation of NYLL § 191 (Compl. ¶¶ 83-86.)  Count V alleges that CPC willfully failed to provide plaintiffs with the requisite paystubs as set forth by NYLL § 195 and 12 N.Y.C.R.R. § 142-3.8, which prejudiced plaintiffs' ability to ascertain and assert their legal rights.  (Compl. ¶¶ 87-88.)

In Counts VI and VII, plaintiffs assert common law claims for breach of contract and unjust enrichment, respectively.  Count VI asserts that, during at least the latter period of plaintiffs' employment, CPC was required to certify and did

certify that it paid plaintiffs wages as required by the Parity Act and the Fair Wages Act.  (Compl. ¶¶ 90-91.)[2]  Count VI further alleges that CPC entered into contracts—of which plaintiffs were third party beneficiaries—with government agencies to pay plaintiffs the wages required by the Parity Act and the Fair Wages Act, but that CPC breached those contracts whenever it assigned plaintiffs to work 24-hour shifts and did not pay all wages due.  (Compl. ¶¶ 92-95.)  Finally, Count VII alleges that CPC was unjustly enriched at plaintiffs' expense by failing to pay all minimum wages due under the Parity Act and the Fair Wages Act because CPC received the benefits of the work that plaintiffs performed without paying all wages due.  (Compl. ¶¶ 96-98.)

As is apparent from the above, the Complaint does not assert any violation of any collective bargaining agreement, nor does it even make a reference to the existence of one.  In other words, no claim, at least on its face, purports to rely on any term included in a collective bargaining agreement or other labor agreement entered into by the parties.

II.    LEGAL STANDARDS

A.    <u>Motion to Remand</u>

A defendant may remove an action from state to federal court by filing a notice of removal in the federal court.  <u>See</u> 28 U.S.C. § 1446(a).  The notice must contain "a short and plain statement of the grounds for removal," <u>id.</u> § 1446(a), and

---

[2] The Parity Act and the Fair Wages Act each require home health care services agencies, as a condition of their contracts with government agencies, to certify in writing that they are in compliance with the requirements of those laws.  <u>See</u> N.Y. PHL § 3614-c; N.Y.C. Admin. Code § 6-109.

"be filed within 30 days after the receipt by the defendant . . . of a copy of the initial pleading," id. § 1446(b)(1).  Removal is proper in "any civil action . . . of which the district courts of the United States have original jurisdiction."  Id. § 1441(a).  A federal district court has federal question jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States."  Id. § 1331.

Generally, removal jurisdiction must be "strictly construed," Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32 (2002), and any doubts should be resolved against removability "out of respect for the limited jurisdiction of the federal courts and the rights of states," In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 488 F.3d 112, 124 (2d Cir. 2007).  Thus, a "party seeking removal bears the burden of showing that federal jurisdiction is proper."  Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 327 (2d Cir. 2011).  A case removed from state court shall be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c).  Ordinarily, "jurisdictional questions . . . must precede merits determinations in dispositional order."  Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007).  "'It is . . . well established that when the question is subject matter jurisdiction, the court is permitted to rely on information beyond the face of the complaint.'"  In re Petition of Germain, No. 15-665, 2016 WL 3083428, at *1 (2d Cir. June 1, 2016) (quoting St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply, 409 F.3d 73, 80 (2d Cir. 2005)); see also Severin v. Project OHR, Inc., No. 10 Civ. 9696 (DLC), 2011 WL 3902994, at *1 n.1 (S.D.N.Y. Sept. 2, 2011).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987); see Romano v. Kazacos, 609 F.3d 512, 518-19 (2d Cir. 2010).  A federal question may arise in two ways—either where "federal law creates the cause of action asserted" or where a state law claim "'necessarily raise[s] a stated federal issue, actually disputed and substantial.'" Gunn v. Minton, 133 S. Ct. 1059, 1064-65 (2013) (quoting Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005)). "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Id. at 1065.

B.    LMRA Preemption

An exception to the well-pleaded complaint rule applies to state law claims that are completely preempted by Section 301 of the LMRA.  Vera v. Saks & Co., 335 F.3d 109, 113-14 (2d Cir. 2003) ("The 'unusual pre-emptive power' accorded section 301 extends to create federal jurisdiction even when the plaintiff's complaint makes no reference to federal law and appears to plead an adequate state claim." (quoting Livadas v. Bradshaw, 512 U.S. 107, 122 n.16 (1994))).[3]  Pursuant to

---

[3] Section 301 of the LMRA states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having

Section 301, "when a state law claim alleges a violation of a labor contract, the Supreme Court has held that such claim is preempted by section 301 and must instead be resolved by reference to federal law." <u>Vera</u>, 335 F.3d at 114 (citing <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 209 (1985)). Section 301 has, furthermore, been interpreted to preempt "not only contract claims directly alleging that a party has violated a provision of a collective-bargaining agreement, but also those state-law actions that require interpretation of such an agreement." <u>Severin</u>, 2011 WL 3902994, at *4. Thus, "[w]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." <u>Vera</u>, 335 F.3d at 114.

Notwithstanding the foregoing, "[n]ot every suit concerning employment or tangentially involving a CBA . . . is preempted by section 301." <u>Id.</u>; <u>see</u> <u>Kaye v. Orange Reg'l Med. Ctr.</u>, 975 F. Supp. 2d 412, 421 (S.D.N.Y. 2013). "For example, if a state prescribes rules or establishes rights and obligations that are independent of a labor contract, actions to enforce such independent rules or rights would not be preempted by section 301." <u>Vera</u>, 335 F.3d at 115. "Nor would a state claim be preempted if its application required mere referral to the CBA for 'information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.'" <u>Id.</u> (quoting

---

jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 n.12 (1988)).

Accordingly, "[e]ven if resolving a dispute under a state law claim and the collective-bargaining agreement 'would require addressing the precisely same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes.'" Severin, 2011 WL 3902994, at *4 (quoting Lingle, 486 U.S. at 410).  "Whether a state cause of action may proceed in state court depends on the legal character of a claim, as independent of rights under the collective bargaining agreement, (and not whether a grievance arising from precisely the same set of facts could be pursued.)." Foy v. Pratt & Whitney Grp., 127 F.3d 229, 233 (2d Cir. 1997) (quotation marks omitted).

III.    DISCUSSION

    A.    Motion to Remand

    As detailed above, plaintiffs allege several claims under the NYLL—including claims for unpaid minimum wages, overtime wages, spread-of-hours pay, and wages for work performed, and failure to comply with wage notification requirements—as well as claims for breach of contract and unjust enrichment arising out of CPC's purported violations of the Parity Act and the Fair Wages Act.  Although plaintiffs have not pled a cause of action under federal law, and the Complaint does not actually reference a collective bargaining agreement, CPC contends that plaintiffs are parties to a collective bargaining agreement, and that their claims are substantially dependent on an interpretation of that agreement.  As the party that

removed this action to this Court, CPC bears the burden of showing that LMRA preemption confers federal subject matter jurisdiction over this action.

Courts in this District have observed that cases in which LMRA preemption applies typically fall into three categories: (1) "cases in which a plaintiff alleges that defendant violated the CBA itself," (2) "cases in which a plaintiff claims that a provision of the CBA itself violates state law," and (3) "cases in which a CBA provision relevant to the plaintiff's claim is ambiguous." Kaye, 975 F. Supp. 2d at 423 (collecting cases). This case clearly does not fall into either of the first two categories. The Complaint makes no reference to the CBA, let alone assert that CPC violated it. Moreover, plaintiffs nowhere, at least at this stage, allege that a provision of the CBA itself violates state law. The question presented on plaintiffs' motion is therefore whether the CBA contains any terms upon which plaintiffs' claims substantially depend that are ambiguous or otherwise require interpretation. To the extent that the relevant CBA provisions are clear (in other words, merely requiring the Court to consult them), LMRA preemption does not apply. See id. at 425; Johnson v. D.M. Rothman Co., 861 F. Supp. 2d 326, 332-33 (S.D.N.Y. 2012).

CPC contends that plaintiffs' claims are inextricably tied to and require interpretation of the CBA with respect to certain (1) wage provisions and (2) grievance and arbitration provisions set forth therein. At the outset, in order to determine whether any provision in the CBA will have to be interpreted to adjudicate plaintiffs' claims, the parties raise a threshold issue as to which

agreement(s) actually applies.  CPC contends that the 2015 MOA, made effective

December 1, 2015, governs CPC's employment relationship with plaintiffs—who

each ceased working at CPC prior to that date—on the ground that the 2015 MOA

was made retroactive.  This argument lacks merit.  Regardless of the purported

retroactivity of the 2015 MOA, and 1199's authority to bargain on behalf of then-

current employees, plaintiffs may not be bound by subsequently adopted

amendments to a collective bargaining agreement to which they were not parties.

iPayment, Inc. v. 1st Americard, Inc., No. 15 Civ. 1904 (AT), 2016 WL 1544736, at

*3 (S.D.N.Y. Mar. 25, 2016) ("Because the obligation to arbitrate is created by

contract, 'a party cannot be required to submit to arbitration any dispute which he

has not agreed so to submit.'" (quoting United Steelworkers of Am. v. Warrior &

Gulf Navigation Co., 363 U.S. 574, 582 (1960))); see also Allied Chem. & Alkali

Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co., Chem. Div., 404

U.S. 157, 172 (1971); Meza v. Gen. Battery Corp., 908 F.2d 1262, 1271 (5th Cir.

1990) ("Absent some evidence that past members expressly or impliedly authorized

the union to proceed in their behalf, there can be no presumption that the Union

had authority to act in a representative capacity.").  Nor may plaintiffs be bound by

the subsequently executed side letter, dated April 26, 2016 (see Kirschner Aff., Ex.

4), further modifying the CBA.  Accordingly, the most recent agreement governing

the parties' employment relationship during at least some of the relevant period is

the 2014 MOA (as well as the operative CBA, dated August 8, 2012 (Kirschner Aff.,

Ex. 7 ("2012 CBA"))).[4]

_____

[4] The Court notes that because plaintiffs Chu and Chung ceased working at CPC in 2013, the Court

Turning to the specific provisions of the 2014 MOA and the 2012 CBA, there is no basis at this stage to find that any of plaintiffs' claims are substantially dependent on interpretation of any CBA terms.  CPC first points to wage-related provisions that state that employees assigned to clients designated as "Live-In" cases shall be paid a minimum of twelve hours per day, plus a $16.95 per diem premium (2014 MOA Art. X (6)), and that it "shall pay its Employees who are working on active cases for time spent in meeting the minimum training requirements in training programs required by the Employer" (2012 CBA Art. XXI (1)).

While the 2014 MOA and the 2012 CBA undoubtedly contain terms relating to the payment of wages, that fact alone is insufficient to find that the LMRA preempts plaintiffs' independent state law claims.  Kaye, 975 F. Supp. 2d at 422-25.  Courts have routinely held that the sort of unpaid wage and notice claims under the NYLL alleged here are "legally independent" of wage-related provisions in a CBA and are therefore not preempted by the LMRA.  Severin, 2011 WL 3902994, at *4; see also Kaye, 975 F. Supp. 2d at 425-26; McLean v. Garage Mgmt. Corp., No. 10 Civ. 3950 (DLC), 2011 WL 1143003, at *3 (S.D.N.Y. Mar. 29, 2011); Polanco v. Brookdale Hosp. Med. Ctr., 819 F. Supp. 2d 129, 134 (E.D.N.Y. 2011).[5]  Moreover,

is doubtful that their claims would be governed by the 2014 MOA, which is dated June 6, 2014. Nonetheless, because the Court concludes that none of plaintiffs' state law claims require substantial interpretation of the 2014 MOA in any event, and CPC does not raise any provisions of any earlier Memoranda of Agreement in opposing the motion to remand, the Court need not address what significance, if any, plaintiffs' pre-2014 departure from CPC has on the pending motion. Additionally, the Court notes that it does not believe that consideration of any of the newly added provisions of the 2015 MOA would alter the outcome of this motion.

[5] Although a number of courts have found NYLL claims to be preempted by § 301 of the LMRA in certain contexts, e.g., Vera, 335 F.3d at 115 (2d Cir. 2003) (concluding that the plaintiff's NYLL § 193

the Court independently concludes that the provisions that CPC identifies need not be resolved at all to adjudicate any of plaintiffs' claims, and therefore cannot serve as the basis for LMRA preemption.

CPC next argues that adjudication of plaintiffs' claims will require the Court to interpret a number of provisions relating to grievance and arbitration procedures.[6]  Again, because plaintiffs are not bound by the 2015 MOA, the Court need only consider whether plaintiffs' claims will require it to interpret any provisions of the 2014 MOA or the 2012 CBA.  Accordingly, the Court need only consider the two arbitration-related provisions of the 2014 MOA that CPC identifies.  The first is a generalized provision stating only that "the parties shall meet in good faith to negotiate . . . an alternative dispute resolution procedure" and if they are unable to agree on a procedure, then CPC could submit that dispute to binding arbitration.  (2014 MOA Art. XX (24).)  The second is a provision stating that wage payments are conditioned on compliance with the Parity Act and that "[i]f a party claims that a term in their agreement is non-compliant, the parties will immediately meet to discuss appropriate modifications to bring the MOA into compliance," and that if the parties cannot resolve that dispute, the matter would

claim required interpretation of a collective bargaining agreement to determine, <u>inter alia</u>, whether it embodied an agreement to alter the common law rule regarding when commissions are earned); <u>Levy v. Verizon Info. Servs., Inc.</u>, 498 F. Supp. 2d 586, 597-98 (E.D.N.Y. 2007) (concluding that the plaintiffs' § 193 unlawful wage deduction claims required interpretation of a collective bargaining agreement to decide whether incentive compensation was actually earned pursuant to that agreement), those cases are materially distinguishable from the claims asserted here and the CBA provisions upon which CPC seeks to rely.

[6] To the extent that CPC can be construed as also arguing that the Federal Arbitration Act ("FAA") confers federal subject matter jurisdiction here, the Court rejects that argument because the FAA "does not provide federal courts with an independent grounds for jurisdiction."  <u>Tully Const. Co./A.J. Pegno Const. Co., J.V. v. Canam Steel Corp.</u>, No. 13 Civ. 3037 (PGG), 2015 WL 906128, at *4 n.4 (S.D.N.Y. Mar. 2, 2015) (citing <u>Hall Street Assocs., LLC v. Mattel, Inc.</u>, 552 U.S. 576, 581-82 (2008)).

be referred for binding arbitration.  (2014 MOA Art. XX (22).)  As explained below, these provisions do not give rise to LMRA preemption.

First, a defendant's assertion that a collective bargaining agreement compels arbitration is a defense to a claim that is distinct from the LMRA complete preemption doctrine and as such does not create a valid basis for federal jurisdiction.  E.g., Dall v. Albertson's, Inc., 234 F. App'x 446, 449 (9th Cir. 2007) ("In this case, a § 301 issue arises only because of Appellees' defense, and not from the face of the complaint.  As such, the exception does not apply and the district court lacked removal jurisdiction.") (unpublished); Price v. Goals Coal Co., 161 F.3d 3 (4th Cir. 1998) ("The 'complete preemption exception' to the 'well-pleaded complaint' rule does not apply when the employer merely raises the collective bargaining agreement as a defense to the state law claim.") (unpublished).  Second, even if an arbitration provision could serve as the basis for LMRA preemption, the Court concludes that it would not need to seriously interpret either provision of the 2014 MOA, because neither provision, on its face, creates a clear and unmistakable waiver of rights to bring a statutory claim in a judicial forum.  See Kaye, 975 F. Supp. 2d at 427; McLean, 2011 WL 1143003, at *4-5; see also Lai Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc., 21 N.Y.S.3d 814, 826 (N.Y. Sup. Ct. 2015) (considering 2014 MOA provisions at issue here).

Thus, for the foregoing reasons, plaintiffs' state law claims are not preempted by the LMRA, and this Court lacks subject matter jurisdiction over this action.[7]

---

[7] In opposing the motion to remand, CPC also argues that the Court should dismiss this action or, alternatively, consolidate it with Chan, on the ground that it is duplicative of that case.  In light of

B.    Motion to Compel Arbitration

Because the Court grants plaintiffs' motion to remand on the basis that it lacks subject matter jurisdiction over this action, the Court lacks authority to consider CPC's motion to compel arbitration.  See Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994).  CPC's motion is denied as moot on that basis.

IV.    CONCLUSION[8]

For the reasons set forth above, plaintiffs' motion to remand this action to state court is GRANTED.  Because the Court lacks subject matter jurisdiction over this action, defendant's motion to compel arbitration is DENIED as moot.

The Clerk of Court is directed to close the motions at ECF Nos. 5 and 15, and to remand this case to the New York Supreme Court, New York County.

SO ORDERED.

Dated:        New York, New York
              July 11, 2016

_____
        KATHERINE B. FORREST
        United States District Judge

_____

the Court's determination that it lacks subject matter jurisdiction over this action, the Court denies CPC's request as moot.

[8] The Court has considered CPC's other arguments, and concludes that they are without merit.

16